## MEASURE OF DAMAGES IN AN ACTION AGAINST AN AGENT WHO EXCEEDED HIS AUTHORITY.

Circuit Court of Cuyahoga County.

### L. K. RAYMOND V. F. L. RAYMOND.

*Power of Attorney—Power to Sell Does Not Authorize Exchange of Property—Measure of Damages when Property is Wrongfully Disposed of.*

1. A power of attorney granting to the attorney the right to "sell and dispose of" certain premises does not authorize him to exchange them for cther real estate.
2. Where property is exchanged for other property it can not be treated as a cash sale even though the deed recites a certain money consideration.
3. Where an agent has exceeded his authority by exchanging his principal's property for other property, title to which he has caused to be taken by certain relatives, but without any bad faith on his part, upon suit by the principal for damages, the measure of damages will be the actual value of the property disposed of and not the consideration recited in the deed.

WINCH, J.; MARVIN, J., and LAUBIE, J. (sitting in place of Judge Hale), concur.

On December 19, 1893, the plaintiff, being the owner of certain real estate on Euclid avenue in the city of Cleveland, which was heavily encumbered, and also being indebted to his brother, the defendant, his wife joining with him, executed a power of attorney to the defendant, authorizing the latter "to sell and dispose of 'said premises' for such price or sum of money, and to such person or persons as he shall think fit and convenient. And until such sale and conveyance to rent and keep said property in repair, and from the proceeds received from the rents and from the sale of said property, to pay all expenses and costs of repairs, taxes, insurance and claims and liens of every description against said property, and any and all moneys that may in any way be due or owing from us or either of us to the said

F. L. Raymond (the defendant) rendering the balance if any to us.''

On the same day plaintiff executed and delivered to the defendant a mortgage on said premises securing his note of said day for $2,413.38, with interest at seven per cent., the sum including the indebtedness then existing in favor of the defendant and other payments made by the defendant in clearing up minor charges against the property. At that time there was a prior mortgage on the property held by E. J. Weil on which was due the sum of $8,500, so that the total indebtedness charged against the property in 1893 was $10,913.38.

The defendant took charge of the property, rented it, kept it in repair, paid the taxes on it, and collected the rents from it, but the income from the property did not equal the outgo, so that on October 4th, 1899, according to the account submitted by defendant, there was due him on his mortgage, including unpaid interest thereon, and for money advanced by him in keeping the premises in repair, the sum of $5,140.22, and there was due on the Weil mortgage, including interest and taxes the sum of $10,439.54, the total indebtedness against the property having increased to $15,579.56.

On the last named day defendant made an exchange of properties with one T. M. Bates, and deeded the property on Euclid avenue to the latter, executing the deed as attorney for plaintiff and his wife. The consideration named in the deed was $18,375, and Bates assumed and agreed to pay the Weil mortgage. Bates shortly thereafter paid the Weil mortgage and it and the note secured thereby were canceled.

In exchange for the Euclid avenue property, Bates gave $2,575 in money and two houses and lots on Knox street and a house and lot on Mayfield street. The Knox street properties he deeded to Frank C. Raymond, son of the defendant, the consideration being named at $4,100 each. On each of these properties Frank C. Raymond gave a mortgage back for $2,250. The Mayfield street property was deeded to Belle Raymond, wife of the defendant, consideration named, $5,100, and she gave a mortgage back on this property for $3,000. The cash payment was reduced by commissions, necessary expenses and application on

the Weil mortgage, so that defendant really received in cash the sum of $1,968.76.

Shortly after the transaction defendant rendered to plaintiff a statement showing the disposition he had made of the property and exhibiting the accounts between parties. This statement treats the two Knox street properties and the Mayfield street property as belonging to plaintiff, gives the values at which they were taken at, amounting to $13,300, less the mortgages given thereon, aggregating $7,500, making the equities therein $5,800.

Defendant applies the sum of $1,968.76 cash received by him from Bates to his claim of $5,140.22, leaving the balance due him of $3,171.46, and claims the latter amount as his share in said "equity."

Plaintiff refused to abide by this statement of accounts and in May, 1900, brought this action in which he asks for an accounting and a judgment for what may be found due him on the accounting. He treats the exchange of properties as a cash sale and claims that defendant should account to him for the sum of $18,375 cash, that being the consideration named in the deed of the Euclid avenue property.

The defendant, answering, sets up the transaction substantially as here given, says that the exchange was for the benefit of all parties concerned; that by the exchange he largely reduced plaintiff's mortgage indebtedness; alleges that he has rendered full and itemized statements of the matter and that plaintiff has expressed satisfaction with his management and has not offered to liquidate his indebtedness to defendant.

Defendant says he is at present unable to sell the Knox and Mayfield street properties and convert them into money and will be unable to render any further account until he does sell them. He says that he took title to the three properties in the names of his son and wife to avoid the necessity of re-executing mortgages and power of attorney to himself, and to facilitate the transfer of the property; that he has since offered to have said properties conveyed to plaintiff upon the execution to him of proper mortgage and power of attorney and that he is still ready and willing to have said conveyances made.

At the trial below as well as in this court such deeds were tendered.

The first question raised by this situation is: "Was the disposition of the Euclid avenue property a cash sale?" We think not. Consideration stated in a deed can always be inquired into. The real consideration was an exchange of properties.

Second: Was the power of attorney broad enough to include the right of exchange as well as to sell? We do not think so. Such construction can only be given the instrument by enlarging upon the meaning of the one word "dispose" used conjunctively and not disjunctively with the word "sell" and failing to give effect to the whole instrument by considering the purpose for which it was intended.

But whether the power of attorney would warrant an exchange or not is immaterial, as will be seen by a further consideration of the case. It did not warrant taking deeds either to the defendant or to his son or wife and it would not cover property received in exchange if title were taken to the plaintiff himself, for it described and applied to the Euclid avenue property alone.

Having thus concluded that the agent exceeded his authority the third question to be answered is: What remedy has the plaintiff? Authorities are so numerous that it is unnecessary to cite them that the principal may elect between three remedies.

1. He may repudiate the transaction and reclaim the original property.

2. He may bring an action against his agent asking for damages and the measure of damages would be the value of the property wrongfully disposed of by the agent.

Plaintiff has seen fit to pursue the last named remedy, but a fourth contention now arises. Plaintiff says he is entitled to be paid in money the difference between the considerations named in the deeds of the three lots and the mortgages upon them. This is the same as asking for the consideration named in the deed to Bates of the Euclid avenue lots. On an exchange of properties the considerations named in the deeds rarely represent the values. Defendant on the other hand claims that plaintiff must adopt the transaction *in toto* and take the properties themselves charged with the indebtedness to him. This might be true if the deeds had been made direct to the plaintiff, but persons

not parties to this suit hold title. Indeed, had defendant taken title to himself, he would hold the same in the nature of a mortgage interest, to secure the debt due him and as trustee for the plaintiff of any overplus. We could then, or if the plaintiff held title, order the property sold, the mortgage liens first paid, the defendant's claim next paid, and the balance to go to the plaintiff. Any such order in this case would be inoperative because the parties holding legal title are not before us.

There is no merit in the contention about a continuing trust existing in property to which the trustee has no legal title and that the trustee is not bound to account until the third parties convey the property and pay over the proceeds to him, and especially since neither party has seen fit to bring these third parties before the court so that they or the property held by them may be subject to the orders of the court. It is idle to make an order that can not be enforced.

It is due the defendant to say that though he was charged with bad faith in this transaction, not only was no testimony adduced tending to prove bad faith on his part, but on the contrary it was shown conclusively that in making the exchange of properties he acted in the utmost good faith and with an honest desire to produce the fairest and best results for all parties concerned. Such being the case we consider it equitable to charge the defendant with the fair market value of these three properties in 1899. It is the same as though he had received the consideration for the Euclid avenue property in money, but the exact amount of money received by him was unknown to plaintiff; or as though having taken the three houses in exchange he had immediately sold them and refused to make any statement of the proceeds of their sale.

From the testimony we find that in October, 1899, when the exchange of properties was made, the fair market value of the Knox street properties was $3,500 each, and of the Mayfield street property $4,000, making $11,600 in all; deducting the mortgages on these properties amounting to $7,500 leaves the net value of all three places $4,100; with which amount we charge the defendant.

It was admitted on the hearing that the statement of accounts between the parties rendered by defendant November 6, 1899,

is substantially correct. The only modifications in it we make are to compute interest on the open account due defendant at 6% instead of 7% after deducting from said account the sum of $1,500 overcharge on amount paid on Lee judgment. Thus taking the account, we find that on October 4. 1899, that plaintiff was indebted to defendant in the sum of $3,103 58. Deducting this amount from the $4,100 with which we have charged defendant, leaves him indebted to the plaintiff in the sum of $996.42.

Interest should be computed on this amount from October 4, 1899, and decree may be drawn accordingly.

Defendant has asked for compensation for his services in taking care of the Euclid avenue property. It turns out that his interest in the property was more considerable than that of his brother and under the circumstances we do not think he should be paid anything for his services.